FILED
Clerk
District Court
DEC 02 2022
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| PING SHUN CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC<br><br>    Defendant. | Case No.: 1-20-cv-00012<br><br>**MEMORANDUM DECISION GRANTING AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT POST-APPEAL** |

After the Ninth Circuit vacated and remanded this Court's summary judgment order, (9th Cir. Mem. 2, ECF No. 103), the matter came for a status conference on September 29, 2022, at which time the Court GRANTED partial summary judgment for the account stated claim in the amount of $263,846.25 for the food services and $638 for the spa services. Additionally, the Court DENIED without prejudice the motion for partial summary judgment for the disputed amount of $179,416.25 pursuant to Federal Rule of Civil Procedure 56(d). The Court memorializes its reasons as follows.

## I.    PROCEDURAL HISTORY

On March 15, 2021, the Court issued a Decision and Order granting Plaintiff Ping Shun Corporation's ("Ping Shun") motion for partial summary judgment on its account-stated (fourth) cause of action against Defendant Imperial Pacific International (CNMI), LLC ("IPI") in the amount of $443,900.50. (Decision and Order 13, ECF No. 33.) The Court also previously granted Plaintiff partial summary judgment on its breach of contract of the spa services agreement (second) cause of action, given that the amount sought in that claim equaled the amount sought for spa services rendered in the account-stated claim. (Mins., ECF No. 27.) Plaintiff then moved to amend its complaint to dismiss its

two remaining causes of actions—breach of contract of the food services agreements (first cause of action) and unjust enrichment (third cause of action)—so that final judgment may be entered. (ECF No. 40 at 3.) The Court subsequently granted that motion and directed entry of final judgment in favor of Plaintiff and against Defendant in the principal amount of $443,900.50 with post judgment interest. (Order 2-3, ECF No. 41.)

Civil judgment was then entered accordingly. (Judgment, ECF No. 42.) Defendant IPI timely filed its notice of appeal. (ECF No. 43.) With the 30-day automatic stay on execution of the judgment having expired, Ping Shun filed an application for writ of execution (ECF No. 50), and the Court granted the application a month later (ECF No. 55). A few days after the Court granted Ping Shun's writ of execution, Defendant IPI moved pursuant to Federal Rules of Civil Procedure 60(b) and 62.1 for an indicative ruling on its request for relief from the Court's decision and order granting summary judgment against IPI and the civil judgment against IPI based on newly discovered evidence purporting to show fraud committed by Plaintiff's principal. (Notice of Mot., ECF No. 56; Mem. in Supp. of Motion ("Mot."), ECF No. 56-1.) This Court denied Defendant's Motion for Indicative Ruling. (Tr. of Hr'g on Mot. Indicative Ruling at 56:4, ECF No. 82.)

The Ninth Circuit subsequently reversed this Court's decision on IPI's request for relief, vacated the summary judgment decision, and remanded the case for this Court to consider all the evidence pertaining to the alleged fraud as they may affect Ping Shun's motion for partial summary judgment. (9th Cir. Mem. 2.) After the Mandate from the Ninth Circuit issued (Mandate, ECF No. 104), the Court held status conferences and announced its decision on September 29, 2022 granting in part Ping Shun's motion. (ECF Nos. 105, 108.)

///

## II.   LEGAL STANDARD

### A. Motion for Summary Judgment

A court must grant summary judgment on a claim or defense – or part of each claim or defense— if there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000) (citations omitted).

When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis added) (quoting Fed. R. Civ. P. 56(e)). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party on the evidence presented; a mere "scintilla of evidence" is not sufficient. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" if

3

it could affect the outcome of the case. *Id.* (citing *Anderson*, 477 U.S. at 248). The court views the evidence in the light most favorable to the non-moving party and draws "all justifiable inferences" in that party's favor. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).

In a diversity action raising state law claims, the substantive law of the forum state applies. *See Med. Lab. Mgmt. Consultants v. ABC, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) (citation omitted). "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980) (citation omitted). "When a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 884 n.7 (9th Cir. 2000) (quoting *Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993)). In the absence of controlling precedent from the state's highest court, a court may "look to other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law." *Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1424 (9th Cir. 1991) (citation omitted). Rules of the common law, including the Restatements, "shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary[.]" 7 CMC § 3401. "When there is no dispositive Commonwealth authority on an issue, we may look to persuasive

authority from other jurisdictions." *Commonwealth v. Lot No. 353 New G*, 2012 MP 6 ¶ 16 (N. Mar. I. 2012) (citations omitted).

**B. Defense of Fraud to Account Stated Claim**

As the Ninth Circuit noted "[a]n account stated claim requires a statement of an account and an express or implied manifestation of assent." (9th Cir. Mem. 2 (first citing Restatement (Second) of Contracts § 282 (1981); and then citing 7 N. Mar. I. Code § 3401.).) "[F]ailure to object raises the presumption of an agreement as to the correctness of the account[;]" however, this presumption may be rebutted on the basis of "fraud, mistake, or another equitable consideration[.]" *Polygram, S.A. v. 32-03 Enters., Inc.*, 697 F. Supp. 132, 136 (E.D.N.Y. 1988) (citations omitted). To open and rectify an account "on grounds of fraud, omission, or mistake, the party seeing to open it has the burden of proving the fraud, omission, or mistake by clear and convincing evidence." *Marianas Elect. & Supply Co., Inc. v. Guerrero*, 3 TTR 224, 246 (N. Mar. I. Trial Ct. 1967); *accord Assoc. Petroleum Prods., Inc. v. Nw. Cascade, Inc.*, 203 P.3d 1077, 1082 (Wash. Ct. App. 2009). "A party has engaged in fraud or inequitable conduct if it conceals a material fact that it has a duty to disclose to the other party." *Assoc. Petroleum Prods., Inc.*, 203 P.3d at 1082 (citations omitted). When "ruling on a motion for summary judgment, the [court] must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254. In *Anderson*, the Supreme Court held "that the clear-and convincing standard of proof should be taken into account in ruling on summary judgment motions[.]" *Id.* at 255. "On plaintiff's motion for summary judgment, defendants must come forward with evidence that would allow a reasonable jury to find, by clear and convincing evidence, that each of the elements of fraud has been satisfied." *SNCB Corp. Fin. v. Schuster*, 877 F. Supp. 820, 826 (S.D.N.Y. 1994) (citation omitted).

5

### III.  ANALYSIS

The Ninth Circuit raised two issues for the Court to consider on remand. First, the Ninth Circuit directed that "[t]he district court should rule on IPI's evidentiary objections" to Plaintiff's evidence submitted in opposition to IPI's Rule 60(b) motion. (9th Cir. Mem. 3.) Second, the Ninth Circuit "vacate[d] summary judgment for the district court to determine whether triable issues of fact exist in light of the new evidence." (*Id.*) In vacating summary judgment, the Ninth Circuit granted IPI's relief it requested in its motion for an indicative ruling (ECF No. 56). The Ninth Circuit "conclude[d] that the district court erred in its analysis of the third factor" in determining whether relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b)(2) is appropriate – specifically, whether "the newly discovered evidence must be of such magnitude that the production of it earlier would have been likely to change the disposition of the case." (9th Cir. Mem. 2 (citations omitted).) The issue before the Court on remand was whether partial summary judgment was still proper after the Court determines the admissibility of IPI's new evidence alleging fraud by Ping Shun's agent and manager Ms. Shun Lin Zeng.

### A.  IPI's Objections to Plaintiff's Evidence

IPI filed a motion for an indicative ruling supported by allegations by Mr. Eric Wong, a former employee of one of Ping Shun's sister companies who had an intimate relationship with Ping Shun's agent and manager Ms. Zeng. (Mot. 8; Opp'n 7, ECF No. 64.) In IPI's reply in support of its motion for an indicative ruling, IPI objected to Shun Lin Zeng's Declaration (Zeng Decl., ECF No. 64-1) and the transcript of an audio recording of a conversation between Ms. Zeng and Eric Wong (ECF No. 64-5). (Reply 4-7, ECF No. 68.) Additionally, IPI objected to the completeness of the WeChat messages exchanged between the two (ECF Nos. 64-3, 64-4, 64-6, 64-7). (Reply 7.)

### i. Ms. Zeng's Declaration

IPI requested the Court strike Ms. Zeng's declaration because it failed to comply with Local Rules 7.1(b) and 16.5(a)(4), the Local Rules regarding translation of foreign documents. (Reply 4.) Ms. Zeng's declaration is in the English language and has a translator certification appended to the end; however, IPI noted that "there is no version of the Declaration in a language that Ms. Zeng can understand, and the certification provided does not demonstrate that Ms. Zeng had an opportunity to read and understand the Declaration prior to signing it under penalty of perjury." (*Id.*) However, the referenced Local Rules only pertain to exhibits provided in a foreign language. *See* LR 7.1(b)(3); LR 16.5(a)(4)(A).[1] Ms. Zeng's declaration is in English, thus making Local Rules 7.1(b) and 16.5(a)(4) inapplicable. The Local Rules do not explicitly require a declaration be in the declarant's native language first before it is translated, which IPI appears to assert is required. (*See* Reply 4-5.)

Additionally, the cases that IPI cite do not militate in favor of striking Ms. Zeng's declaration. First, two of the cases are inapposite because in those instances, the declarants provided declarations in a foreign language, which as discussed did not occur here.[2] Second, *In re Cabral*, Nos. 12-12050-A-12, DKE-1, 2012 Bankr. LEXIS 6171, at *10 (Bankr. E.D. Cal. Oct. 10, 2012) is distinguishable from this case because there, the declarant provided an English declaration stating that he cannot read English. Here, Ms. Zeng's declaration does not state that she is unable to read English. (*See* Zeng's

---

[1] Local Rule 7.1(b)(3) provides that "[a]n exhibit in a foreign language, when offered in support of or opposition to a motion, must be accompanied by a translation that complies with LR 16.5(a)(4)." Local Rule 16.5(a)(4)(A) states that "[a]n exhibit in a language other than English must be accompanied by an English translation certified by a qualified translator as true and correct."

[2] *Parra v. Bashas', Inc.*, No. CIV 02-0591-PHX-RCB, 2005 U.S. Dist. LEXIS 46635, 2005 WL 6182338, at *29-30 (D. Ariz. Aug. 29, 2005), *rev'd in part*, 536 F.3d 975 (9th Cir. 2008); *Jack v. Trans World Airlines*, 854 F. Supp. 654, 659 (N.D. Cal. 1994).

Decl.) Rather, based off of the WeChat messages contained at Exhibit H (ECF No. 64-7) to Ms. Zeng's Declaration, it appears that Ms. Zeng is able to read and write some English because she responded in English to Mr. Wong's WeChat messages, which were also written in English. (*See* Ex. H at 4-9, ECF No. 64-7.) This observation of some English proficiency undercuts IPI's conclusion that Ms. Zeng was unable to review and understand the English declaration she signed. Third, the district court in *Matsuda v. Wada*, noted that any argument that an English declaration must be translated to the declarant from English to a language the declarant understands "go[es] to the weight of the declaration and not its admissibility." 101 F. Supp. 2d 1315, 1323 (1999) (quoting *Collazos–Cruz v. United States*, 1997 U.S. App. LEXIS 17196, 1997 WL 377037, *3 (6th Cir. July 3, 1997)). Thus, to the extent that Ms. Zeng's declaration was not translated to her in Chinese, such arguments relate to the amount of weight the declaration carries, not its admissibility. Therefore, IPI's request to have Ms. Zeng's declaration stricken because it was not interpreted and/or translated and is therefore inadmissible evidence was denied.

Furthermore, as the Ninth Circuit hinted in its Memorandum, the declaration could still be considered at summary judgment. (*See* 9th Cir. Mem. 3.) Specifically, the Ninth Circuit noted that

> [i]f the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment.

(*Id.* (quoting *Sandoval v. County of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021)).) As such, IPI's objections regarding the translation (or lack thereof) of Ms. Zeng's declaration can be overcome because "the contents of [her declaration] can be presented in a form that would be admissible at trial – for example, through live testimony by [Ms. Zeng.]" *Id.* The contents of Ms. Zeng's declaration

would be admissible at trial if she testified in Chinese and a qualified interpreter translated her testimony to English. Thus, the Court overruled IPI's evidentiary objections to the contents of Ms. Zeng's declaration.

### ii. Transcript of Audio Recording Between Ms. Zeng and Mr. Wong

IPI asserted that the transcript of the audio recording between Ms. Zeng and Mr. Wong (ECF No. 64-5) should be stricken because "it was made in violation of CNMI law, and does not include a required Translator Certification." (Reply 6.)

First, IPI claimed that the conversation was unlawfully recorded because Mr. Wong did not consent to the recording and there was no warrant as the NMI Constitution requires. (Reply 5.) Despite IPI's position to the contrary, Ms. Zeng, a private individual, did not need a warrant to record her conversation with Mr. Wong. (*See* Tr. of Hr'g on Mot. Indicative Ruling at 19:13-16, ECF No. 82.) The protections contained in constitutions, including bills of rights, "apply only against *the government*; '[i]ndividual invasion of individual rights' is not covered." *Robertson v. Watson*, 560 U.S. 272, 276-77 (2010) (Roberts, R., dissenting) (quoting *The Civil Rights Cases*, 109 U.S. 3, 11 (1883)); *see also State v. Snyder*, 1998-NMCA-166, 126 N.M. 168, 175) (Hartz, J., specially concurring) ("Even though the provisions of such a bill of rights typically include no reference to the sovereign, it is understood that the provisions relate only to the sovereign that is the subject of the constitution."). As the U.S. Supreme Court has explained,

> The constitution was ordained and established by the people of the United States for themselves, for their own government, and not for the government of the individual states. Each state established a constitution for itself, and, in that constitution, provided such limitations and restrictions on the powers of its particular government as its judgment dictated. The people of the United States framed such a government for the United States as they supposed best adapted to their situation, and best calculated to promote their interests. The powers they

9

> conferred on this government were to be exercised by itself; *and the limitations on power, if expressed in general terms, are naturally, and, we think, necessarily applicable to the government* created by the instrument.

*Barron v. City of Baltimore*, 32 U.S. 243, 247 (1833) (emphasis added), *superseded by constitutional amendment*, U.S. Const. amend. XIV. Similarly, the Personal Rights listed in Article I of the Commonwealth's Constitution apply only against the CNMI government. As such, the prohibition against unreasonable searches and seizures (including warrantless "wiretapping, electronic eavesdropping or other comparable means of surveillance") contained in Article 1, Section 3 of the Commonwealth's Constitution only apply against the government, not individuals. The Fourth Amendment of the U.S. Constitution also has the same limitations in that the Fourth Amendment's "protection applies to governmental action" as "it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies[.]" *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921). Here, Ms. Zeng was not acting on behalf of the government and thus, she did not need a warrant to record her conversation with Mr. Wong.

Moreover, the cases that IPI cited to support its contention that Ms. Zeng needed a warrant were unavailing since the CNMI government was a party in both criminal cases. *See Commonwealth v. DeLeon Guerrero*, No. 02-0064 (N. Mar. I. Commw. Super. Ct. May 27, 2004); *Commonwealth v. Pua*, 2006 MP 19 (N. Mar. I. 2006). Further, the Ninth Circuit case that IPI referenced is inapplicable because the jurisdiction in that case, California, has state common law on the invasion of privacy and section 632 of the California Penal Code, which requires all parties' consent to record a conversation. *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1118 (9th Cir. 2017). IPI even conceded that "the CNMI lacks a statute governing whether one- or two-party consent is necessary for a legal recording[.]" (Reply 6.) Therefore, IPI's evidentiary objection that the transcript of the audio recording should be

stricken for lack of Mr. Wong's consent was overruled.

Second, IPI asserted that because the conversation likely did not occur in English, the transcript is "a translation of a foreign-language recording" and thus should "be authenticated by showing that [it is] accurate and done by a competent translator." (Reply 7 (quoting *Tei Yan Sun v. Governmental Auths. of Taiwain*, No. C 94-2769 SI, 2001 U.S. Dist. LEXIS 1160, 2001 WL 114443, at *7 (N.D. Cal. Jan. 24, 2001)).) Unlike the translated WeChat messages and Ms. Zeng's declaration that all contain translator certifications, the transcript of the audio recording does not contain a translator certification. (Audio Recording Tr., ECF No. 64-5.) Plaintiff appeared to acknowledge this oversight as it filed a Notice of Errata (ECF No. 76) and the resubmitted transcript with a translator certification appended to the end (Resubmitted Ex. "D", ECF No. 76-1). The translator certification addressed IPI's concerns as the translator certifies that she is a competent translator, and the transcript is an accurate translation. (Resubmitted Ex. "D" at 8.) This correction mooted IPI's objection.

Thus, IPI's evidentiary objections to the transcript of the conversation between Ms. Zeng and Mr. Wong were overruled.

### iii. WeChat Messages

IPI objected to the WeChat messages (ECF Nos. 64-3, 64-4, 64-6, 64-7) that were submitted with Ms. Zeng's declaration arguing that they were incomplete and were "carefully curated . . . to inaccurately portray Mr. Wrong in a poor light." (Reply 7.) However, IPI's basis for this objection was based on Mr. Wong's declaration wherein he speculated that "[a]lthough [he] cannot confirm this, because [he] deleted these messages from [his] phone, [he] believe[s] that the version of these messages submitted by Ms. Zeng have been modified by deleting her responses to some of my messages." (Second Wong Decl. ¶ 29, ECF No. 68-1.) Furthermore, this unsubstantiated allegation

11

was contradicted by Ms. Zeng's declaration wherein she attested the attached WeChat messages are "[t]rue and correct copies[.]" (Zeng Decl. ¶¶ 24, 25, 28, 29.) Moreover, an objection to completeness functions to admit, not exclude, evidence. *See United States v. Soulard*, 730 F.2d 1292, 1301 (9th Cir. 1984). Accordingly, IPI's objection that the WeChat messages should be stricken for lack of completeness was overruled.

### B. Ping Shun's Objections to IPI's Evidence

Next, the Court addressed Ping Shun's evidentiary objections raised within the scope of the motion for indicative ruling.

#### i. Personal Knowledge Objection

In its opposition to the motion for indicative ruling, Plaintiff argued that Mr. Wong lacked the personal knowledge requirement per Federal Rule of Evidence 602 to properly attest to whether Ms. Zeng's records were correct. (Opp'n 18-19.) Personal knowledge is defined as "knowledge of a fact perceived by the senses, by one who has had an opportunity to observe, and must have actually observed the fact." *Hill v. Boeing Co.*, 765 F. Supp. 2d 1208, 1211 n.7 (C.D. Cal. 2011) (citations omitted). Here, Mr. Wong declared under penalty of perjury that he "assisted [Ms. Zeng] in preparing and delivering meals to IPI employees" such that he "personally witnessed Ms. Zeng making two or three check marks for an IPI employee, indicating that they took multiple meals on that day, when that employee had actually only received one meal on that particular day" and "personally witnessed [Ms. Zeng] recording that we delivered many more meals that were actually delivered on that day[.]" (First Wong Decl. at 2-3, 6, ECF No. 56-2.) Additionally, Mr. Wong had the opportunity to witness the alleged fraud because of both his personal intimate relationship with Ms. Zeng and his employment with Plumeria International Corporation (a company that Ms. Zeng was the ultimate beneficial owner

of, like she is with Plaintiff) from October 2018 to January 2021. (*See id.* ¶¶ 2-3; Second Wong Decl. ¶ 4.) Also, Mr. Wong stated he participated in the process of preparing and helping deliver the meals for IPI's employees. (First Wong Decl. ¶ 4.) As such, Mr. Wong had an opportunity to witness, and did in fact witness the alleged fraud such that he had the personal knowledge to testify to these statements such that the foundational requirement under Rule 602 is satisfied. The Court overruled Ping Shun's objection to lack of foundation.

### ii. Objection to Veracity of Mr. Wong's Declaration

Ping Shun also objected to the veracity of Mr. Wong's declaration. (Opp'n 14.) However, at summary judgment, courts do not weigh credibility. *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1036 (9th Cir. 2005) (At summary judgment, "the judge does not weigh disputed evidence with respect to a disputed material fact. Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions. These determinations are within the province of the factfinder at trial."). Furthermore, "[t]he court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party." *Potter v. City of Lacey*, 517 F. Supp. 3d 1152, 1159 (W.D. Wash. 2021). Therefore, the Court did not consider the credibility of the witnesses at summary judgment and Ping Shun's objection to the veracity of Mr. Wong's declarations was overruled.

### iii. Relevance Objection

Further, Ping Shun asserted that Mr. Wong's claims about alleged bribery of a Bangladeshi guard, a housing contract, and electronic invoices should be stricken because of irrelevance pursuant

13

to Federal Rule of Evidence 401.[3] (Opp'n 21-23.) [4] At this stage, these allegations are not relevant to the allegation that Ms. Zeng fraudulently inflated the number of meals provided. As such, Ping Shun's objections that these provisions of Mr. Wong's declaration are irrelevant were sustained.

### C. Propriety of Summary Judgment in Light of New Evidence

Having addressed the evidentiary objections, the Court was able to turn to the next issue that the Ninth Circuit identified – the propriety of summary judgment considering the new evidence IPI presented. Because "IPI's newly discovered evidence, assuming it is admissible, suggesting that Ping Shun fraudulently inflated the number of meals it provided may raise a dispute of fact as to the validity of the account stated and IPI's manifestation of assent[,]" the Ninth Circuit "vacate[d] summary judgment for the district court to determine whether triable issues of fact exist in light of the new evidence." (*Id.* at 2-3 (citing *Assoc. Petroleum Prods., Inc.*, 203 P.3d at 1081-82).)

To address whether IPI's newly discovered evidence would likely change the grant of summary judgment, the Court first determined whether IPI's evidence raised an issue of material fact. IPI argued

---

[3] Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

[4] The relevant provisions of Mr. Wong's declaration are provided below:

Mr. Wong asserted that while assisting Ms. Zeng prepare English electronic versions of Plaintiff's invoices, Ms. Zeng "instructed [him] to make sure that the amount entered in the Excel invoices matched exactly the amounts recorded on a printed table that she had received from IPI. [He] personally observed her change the figures in her handwritten ledger to match the figures included in the printed table from IPI." (First Wong Decl. ¶ 13.) He also claimed that he assisted Ms. Zeng create a document listing "damages related to housing units leased by Ms. Zeng to IPI [and] Ms. Zeng instructed [him] to add many new items to the list, making claims that items were missing or damaged by IPI when, in fact, these items were not missing or damaged." (*Id.* ¶ 14.) "As part of [Ms. Zeng's] effort[s] to certify that Ping Shun had delivered meals to IPI employees at the construction site[,]" Mr. Wong stated that he witnessed Ms. Zeng bribe a Bangladeshi security guard to "confirm that Ping Shun delivered the meals as claimed by Ms. Zeng, even though this security guard in fact had no knowledge that the meals were actually delivered or of the amounts of meals delivered." (*Id.* ¶16.)

that its newly discovered evidence indicating Ms. Zeng fraudulently inflated services rendered supported its defense to Plaintiff's account stated claim.[5] (Mot. 11-12.)

Here, Mr. Wong stated that "[o]n many occasions, [he] personally witnessed Ms. Zeng making two or three check marks for an IPI employee, indicating that they took multiple meals on that day, when that employee had actually only received one meal on that particular day." (First Wong Decl. ¶ 6.) Additionally, he attested that he "personally witnessed [Ms. Zeng] recording that we delivered many more meals than were actually delivered on that day—she regularly recording delivering hundreds of meals more than were actually delivered." (*Id.* ¶ 8.) The Court considered the effect (if any) these allegations had on the account stated claim.

### i. Partial Summary Judgment Granted as to Uncontested Amount

Ultimately, the allegations of fraud did not have any bearing on the uncontested amount of $263,846.25 such that the Court granted partial summary judgment in favor of Plaintiff as to that amount. How Yo Chi conducted an audit on behalf of IPI such that IPI admitted that the "total owe[d]" was $263,846.25 as reflected by Mr. Chi's handwritten figure. (ECF No. 18-1 ¶ 16; ECF No. 18-5.) Moreover, Mr. Chi stated in his first declaration that he "discovered that approximately $260,000.00 of invoices provided *had proper signatures* and would be accepted for payment by IPI." (First Chi Decl. ¶ 11, ECF No. 20-1 (emphasis added)). Turning to the new evidence, after reviewing Mr. Wong's Declaration with the fraud allegations, Mr. Chi stated that "[t]he information in Mr. Wong's Declaration is also consistent with the results of the audit that [he] conducted of the supporting

---

[5] Even though IPI did not plead the defense of fraud in its answer to the first amended complaint, that omission did not preclude IPI from raising it at the summary judgment phase. *See Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984) (finding that the defendant was not preluded from raising an affirmative defense for the first time at summary judgment because plaintiffs did not claim prejudice).

documentation submitted by Ping Shun in support of its invoices." (Second Chi Decl. ¶ 5, ECF No. 56-5.) Notably, Mr. Chi did not state that the allegations of fraud now caused him to question whether any of the invoices that were supported with proper signatures were somehow affected by the purported fraud. Ms. Zeng and IPI indicated that every meal had to be supported by a signature by an IPI employee - "IPI would provide Ping Shun with a pre-printed list of employees who were authorized to take meals on a dine-in basis. This pre-printed list would have spaces for each employee to sign his/her name indicating *a meal* was consumed." (Zeng Decl. ¶ 36 (emphasis added); Second Chi Decl. ¶ 5.) Conversely, Mr. Wong stated that on behalf of Plaintiff, Ms. Zeng "kept a daily sign-in sheet with columns for each meal: breakfast, lunch, and dinner, as well as a column for the employee's signature. When an IPI employee would dine in at a restaurant, they would make a check mark for the meal that they were taking and sign their name." (First Wong Decl. ¶ 6.) Neither IPI nor Ms. Zeng stated that checkmarks were part of the procedure for calculating number of meals provided. The checkmarks did not overcome the proper signatures.

Ultimately, Mr. Wong's allegations that Ms. Zeng fraudulently added checkmarks did not impact the portion of the claim submitted by Plaintiff and was not disputed by IPI previously, or at the status conferences held after the Ninth Circuit's mandate. Therefore, the fraud defense to the account stated claim for the uncontested amount of $263,846.25 failed. There was an account presented, which IPI did not dispute, and IPI assented to that amount during the monthly sit downs it had with Ms. Zeng. There was no triable issue of fact as to the undisputed amount, even in light of the new evidence. As such, partial summary judgment was entered for the account stated claim as to the uncontested amount of $263,846.25 for food services and $638 for the spa services agreement.

///

### ii. Partial Summary Judgment Denied as to Contested Amount

As to the remaining disputed amount of $179,416.25 for invoices that lacked signatures, the Court found that the new evidence of fraud potentially created a triable issue of fact. As mentioned above, Mr. Chi stated that Mr. Wong's declaration was consistent with the results of his audit. In his declaration in opposition to the motion for partial summary judgment, Mr. Chi stated that "[t]he difference between that number and the number claimed by Plaintiff represents invoices that were presented to IPI *that lacked signatures* and could, therefore, not be confirmed as being provided for the benefit of IPI." (First Chi Decl. ¶ 11 (emphasis added).) Mr. Wong's statements about the alleged fraud corroborated IPI's dispute as to the invoices that lacked signatures.

Because IPI was the party pleading fraud as a defense to the account stated claim, it "must come forward with evidence that would allow a reasonable jury to find, by clear and convincing evidence" that Plaintiff engaged in fraud when tallying the number of meals provided. *See SNCB Corp. Fin.*, 877 F. Supp. at 826 ("On plaintiff's motion for summary judgment, defendants must come forward with evidence that would allow a reasonable jury to find, by clear and convincing evidence, that each of the elements of fraud has been satisfied."). In this case because IPI sought an opportunity to engage in discovery to support this defense of fraud and discovery had not been completely conducted on this issue, the Court denied without prejudice Plaintiff's motion for partial summary judgment as to this disputed amount so as to allow discovery to proceed on this limited issue pursuant to Rule 56(d)(2). *See Kocsis v. Delta Air Lines, Inc.*, 963 F. Supp. 2d 1002, 1018 (D. Haw. 2013) (quoting *Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004)) (Pursuant to Rule 56(d), "a district court may postpone ruling on a summary judgment motion to allow for further discovery where the non-moving party needs 'additional discovery to explore facts essential to justify the party's opposition.'").

In reopening discovery for this limited purpose, the Court was mindful that the fraud information was not readily available to IPI.

## IV. CONCLUSION

Based on the foregoing, the Court GRANTED Plaintiff's motion for partial summary judgment in the amount of $263,846.25 for the food services and $638 for the spa services and DENIED, without prejudice, Plaintiff's motion for partial summary judgment as to the disputed amount of $179,416.25. Discovery was also reopened for the limited issue of the defense of fraud.

With the Court granting Plaintiff part of its motion for partial summary judgment on the account stated claim, and not the full amount requested, the Court declined to enter a Rule 54 judgment on this claim.

IT IS SO ORDERED this 2nd day of December, 2022.

RAMONA V. MANGLONA
Chief Judge